IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DAVID NORINGTON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 3:12-cv-807-GPM-DGW |
| | ) |
| LIEUTENANT SCOTT, M.J. SCHNICKER, | ) |
| C/O LANGSTON, S. BETHEL, N. MAUE, | ) |
| C/O ROSS, M. A. MIFFLIN, and UNKNOWN | ) |
| PARTY, | ) |
| | ) |
| Defendants. | ) |

**REPORT AND RECOMMENDATION**

**WILKERSON, Magistrate Judge:**

This matter has been referred to United States Magistrate Judge Donald G. Wilkerson by United States District Judge G. Patrick Murphy pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and SDIL-LR 72.1(a) for a Report and Recommendation on the question of whether Plaintiff exhausted his administrative remedies prior to filing this lawsuit, as required by the Prison Litigation Reform Act, 28 U.S.C. § 1997e(a). For the reasons set forth below, it is **RECOMMENDED** that the Motion for Summary Judgment filed by Defendants on February 19, 2013 (Doc. 48) be **DENIED**, that the Motion to Dismiss filed by Plaintiff on February 25, 2013 (Doc. 51) be construed as a response to the motion for summary judgment and be accordingly **DENIED AS MOOT**, that the Motion to Strike filed by Defendants on April 1, 2013 (Doc. 54) be **DENIED**, that the Court find that Plaintiff did exhaust his administrative remedies consistent with the PLRA, and that the Court adopt the following findings of fact and conclusions of law.

**INTRODUCTION**

On February 25, 2013, Defendants filed a Motion for Summary Judgment (Doc. 48) arguing that Plaintiff failed to exhaust his administrative remedies with respect to his claims that on July 22, 2011 he was assaulted by Defendants Bethel, Maue, Ross and an Unknown Correctional Officer as they were escorting him to segregation; that Defendant Scott was present and that he failed to intervene; and that his due process rights were violated by Defendants Schicker, Bethel, Maue (who wrote false disciplinary tickets), Defendant Langston (who provided false testimony), and Defendant Mifflin (who failed to allow him to call witnesses or present a defense at a subsequent disciplinary/adjustment hearing). Plaintiff currently is proceeding on a First Amended Complaint (which was filed after the merits review order) (Doc. 21). In this First Amended Complaint, Plaintiff also appears to make an 8th Amendment Claim with respect to medical treatment, but does not identify a particular Defendant.

In response, Plaintiff filed a "Motion for Dismissal of Defendant's Motion for Summary Judgment and Brief" (Doc. 51) in which Plaintiff essentially responds to Defendants' Motion for Summary Judgment. Defendants, in turn, filed a "Defendants' Reply to Plaintiff's Motion for Dismissal" (Doc. 52). Plaintiff then filed "Plaintiff's Motion: In Response to Defendants' Reply . . ." (Doc. 53), which Defendants seek to strike (Doc. 54) as an improper sur-reply. Plaintiff's Motion to Dismiss is properly construed as a response to the Motion for Summary Judgment. The two following documents, Defendant's reply (Doc. 52) and Plaintiff's response (Doc. 53), are irregular: Defendants' reply does not indicate what exceptional circumstances would warrant the filing of a reply as required by Local Rule 7.1(c); and, Plaintiff's response, which is a sur-reply, is not permitted by the Local Rules. Notwithstanding the irregularities in the current

pleadings, striking both Defendants' Reply and Plaintiff's response will only elevate form over substance. The Court, therefore, will consider Documents 48, 51, 52, and 53 and the attachments thereto.

Pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008), this Court conducted a hearing on April 17, 2013 to consider the issue of exhaustion in which Defendants appeared by counsel and Plaintiff appeared by videoconference, *pro se*. In light of the exhibits filed in this matter and the testimony at the hearing, the following is recommended:

### FINDINGS OF FACT

Plaintiff completed and submitted two grievances to the Grievance Office at the Menard Correctional Center: a six-page grievance (written on the front and back) completed on August 15, 2011 and another grievance completed on August 19, 2011. Both grievances generally covered the same issues; however, the second grievance was limited to Plaintiff's medical concerns (which are not a subject of this lawsuit). The first six-page grievance identified the Defendants herein and the incidents that are the subject of this lawsuit.

Plaintiff testified that on August 20, 2011, he received a "Memo" from Tracy Gruber-Harrington (a grievance officer) which directed Plaintiff to sign and date his August 15, 2011 grievance (Doc. 53-2, p. 1). Plaintiff received an identical memo from Grievance Officer Gruber-Harrington on August 23, 2011 which directed Plaintiff to sign and date his August 19, 2011 grievance (Doc. 53-2, p. 2). Plaintiff further testified that he only resubmitted the August 15, 2013 grievance, which was subsequently dated (and signed) August 23, 2011 and which is contained in numerous exhibits attached to the motions in this matter – the full grievance, however, is located in Document 53-1. At the hearing, Plaintiff testified that he placed the

signed and dated grievance in the prison bars and that it was picked up by Correctional Officer Williams on August 23, 2011 during the third shift. Defendants have presented evidence that the grievance was not received by the grievance officer (Doc. 52-1, Affidavit of Tracy Harrington, ¶ 10).

On September 25, 2011, Plaintiff wrote to Grievance Officer Gruber-Harrington inquiring about the grievances. (Doc. 48-2, p. 11). There is no record of a response from the grievance officer. On September 28, 2011, Plaintiff sent a letter to Major Dunham regarding the events and presumably the grievance he wrote (the record is not complete) (Doc. 48-2, p. 10). In a response received by Plaintiff on September 28, 2011, Barb Mueller (a counselor) indicated receipt of the letter to Major Dunham and further stated that the grievance officer never received the grievance back.

It appears that Plaintiff submitted his grievance to the Administrative Review Board, which received it on October 19, 2011 (Doc. 48-1, p. 10). The ARB returned it to Plaintiff indicating that a counselors and grievance officer's response was required. (*Id.*). Plaintiff appears to have submitted the grievance to his counselor on November 22, 2011 (Doc. 48-1, p. 12). It was noted that the grievance was filed out of time by the counselor – there is also a date stamp that the document was received by the Grievance Office on December 6, 2011 (*Id.*). Plaintiff submitted this grievance to the ARB on December 16, 2011 (Doc. 48-1, at p. 11) but it was not considered further because it was filed out of time.

Plaintiff also has provided copies of grievances submitted in 2008 that were not dated and signed but that did receive responses from his counselor. (Doc. 53-9). Defendants represented at the hearing that the signature requirement is to ensure that no fraud is perpetrated in the

4

grievance process: that prisoners are not writing grievances for other prisoners and that they are verifying that the information contained is true and accurate.

## CONCLUSIONS OF LAW

The PLRA provides:

> No action shall be brought with respect to prison conditions under Section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Exhaustion of available administrative remedies is a precondition to suit. *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004). *See also Perez v. Wis. Dept. of Corr.*,182 F.3d 532, 534-535 (7th Cir. 1999) (stating that §1997e(a) of the PLRA "makes exhaustion a precondition to bringing suit" under § 1983). Failure to exhaust administrative remedies is an affirmative defense; defendants bear the burden of proving a failure to exhaust. *See Jones v. Bock*, 549 U.S. 199, 216 (2007); *Dole v. Chandler*, 483 F.3d 804, 809 (7th Cir. 2006). The Supreme Court has interpreted the PLRA to require "proper exhaustion" prior to filing suit. *See Woodford v. Ngo*, 548 U.S. 81, 84 (2006). This means "using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." *Id.* at 90, (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). In finding that the PLRA requires proper exhaustion, the Supreme Court agreed with the Seventh Circuit's interpretation of the statute as stated in *Pozo*, which required an inmate to "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo*, 286 F.3d at 1025.

Under the procedures set forth in the Illinois Administrative Code, an inmate must first attempt to resolve a complaint informally with his Counselor. ILL. ADMIN. CODE TIT. 20, § 504.810(a). If the complaint is not resolved, the inmate may file a grievance within 60 days after

the discovery of the incident, occurrence, or problem that gives rise to the grievance. *Id.* §504.810(b). The grievance officer is required to advise the Chief Administrative Officer ("CAO" – usually the Warden) at the facility in writing of the findings on the grievance. *Id.* § 504.830(d). The CAO shall advise the inmate of the decision on the grievance within two months of it having been filed. *Id.* § 504.830(d). An inmate may appeal the decision of the CAO in writing within 30 days to the Administrative Review Board for a final decision. *Id.*, § 504.850(a). *See also Dole v. Chandler*, 438 F.3d 804, 806-07 (7th Cir. 2006). An inmate may request that a grievance be handled as an emergency by forwarding it directly to the CAO. If the CAO determines there exists a substantial risk of imminent personal injury or other serious or irreparable harm, the grievance shall be handled on an emergency basis, which allows for expedited processing of the grievance by responding directly to the offender indicating what action shall be taken. *Id.* §504.840.

An inmate is required to exhaust only those administrative remedies available to him. *See* 42 U.S.C. § 1997e(a). The Seventh Circuit has held that administrative remedies become "unavailable" when prison officials fail to respond to inmate grievances. *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002); *Brengettcy v. Horton*, 423 F.3d 674, 682 (7th Cir. 2005). The availability of a remedy does not depend on the rules and regulations as they appear on paper, but on "whether the paper process was in reality open for the prisoner to pursue." *Wilder v. Sutton*, 310 Fed.Appx. 10, 13 (7th Cir. 2009). If further remedies are unavailable to the prisoner, he is deemed to have exhausted. *Id.* Prisoners are required only to provide notice to "responsible persons" about the complained-of conditions. *See Wilder*, 310 Fed.Appx. at 15 (citing *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006)). An inmate forfeits the grievance

process, however, when he causes the unavailability of a remedy by not filing or appealing a grievance. *See Kaba*, 458 F.3d at 684.

The Court finds that Plaintiff did comply with the PLRA and did attempt to submit his grievance but that the procedures were made unavailable to him. Within a month of the incident, Plaintiff filled out a detailed and lengthy grievance regarding his version of the events of July 22, 2011. Plaintiff submitted it the Grievance Office, which received the grievance as evidenced by the later dated memo sent to Plaintiff. That the grievance was returned to him and that the reason for the return was because the grievance was not signed is irrelevant to this inquiry. What is relevant is the action that Plaintiff took after he received the memo. Plaintiff contends that he signed the memo as requested and that he observed Correctional Officer Miller take the grievance from the bars of his cell during the third shift, presumably to put it in the Grievance Officer's box. The Court finds Plaintiff credible – that he did in fact submit the grievance by placing it in the bars of his cell. Plaintiff went through a great deal of effort to fill out a detailed grievance. The incident of July 22, 2011 was clearly weighing on his mind given the length and detail of his grievance and the Court finds it hard to believe that he simply failed to sign and date the grievance and resubmit it for consideration. Plaintiff also attempted to follow up on the grievance by writing to the grievance officer and Major Dunham. While the Court does not find that any personnel at the prison destroyed or threw away his grievance, the Court does find that Plaintiff attempted to submit his grievance to the grievance officer but that he was thwarted.

## RECOMMENDATIONS

For the foregoing reasons, it is **RECOMMENDED** that the Motion for Summary Judgment filed by Defendants on February 19, 2013 (Doc. 48) be **DENIED**, that the Motion to

Dismiss filed by Plaintiff on February 25, 2013 (Doc. 51) be construed as a response to the motion for summary judgment and be accordingly **DENIED AS MOOT**, that the Motion to Strike filed by Defendants on April 1, 2013 (Doc. 54) be **DENIED**, that the Court find that Plaintiff did exhaust his administrative remedies consistent with the PLRA, and that the Court adopt the foregoing findings of fact and conclusions of law.

Pursuant to 28 U.S.C. § 636(b)(1) and SDIL-LR 73.1(b), the parties shall have fourteen (14) days after service of this Report and Recommendation to file written objection thereto. The failure to file a timely objection may result in the waiver of the right to challenge this Report and Recommendation before either the District Court or the Court of Appeals. *Snyder v. Nolen*, 380 F.3d 279, 284 (7th Cir. 2004); *United States v. Hernandez-Rivas*, 348 F.3d 595, 598 (7th Cir. 2003).

**DATED: April 19, 2013**

          **DONALD G. WILKERSON**
          **United States Magistrate Judge**